## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LUIS DIAZ, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:13-CV-775 (JCH) |
| | : | |
| v. | : | |
| | : | |
| THE CONNECTICUT LIGHT AND | : | |
| POWER COMPANY, | : | FEBRUARY 9, 2015 |
| Defendant. | : | |

**RULING RE:  DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT (Doc. No. 33)
and TO STRIKE (Doc. No. 40)**

## I.    INTRODUCTION

Plaintiff Luis Diaz filed this suit on May 30, 2013, alleging that defendant

Connecticut Light and Power Company ("CL&P") violated Title VII of the Civil Rights Act

of 1964 by not interviewing and rehiring him because of his Hispanic race, his Puerto

Rican national origin, and his complaints about CL&P's unlawful discrimination.  See

Compl. (Doc. No. 1).  On August 15, 2014, CL&P filed a Motion for Summary Judgment

(Doc. No. 33), arguing that Diaz cannot establish that its decision not to rehire him was

discriminatory or in retaliation for his complaints.  Instead, CL&P contends that it did not

interview or rehire Diaz because of his past job performance and workplace conduct.

CL&P also filed a Motion to Strike Plaintiff's Exhibit and Portions of Plaintiff's Rule

56(a)2 Statement (Doc. No. 40).

The court grants CL&P's Motion for Summary Judgment.  The court grants in

part and denies in part CL&P's Motion to Strike.

## II.   FACTS

The following facts are taken from the parties' Local Rule 56(a) Statements.[1]
The court notes any disputes.[2]

CL&P hired Diaz as a Temporary Meter Service Installer ("TMSI") in 2010 and assigned him to its Willimantic work center.  Pl.'s Rule 56(a)2 Statement ¶ 7.  Duties of this position included "perform[ing] disconnects and reconnects of electric meters, along with shutoff of customer's power for nonpayment."  Id. ¶ 5.  At the conclusion of a TMSI's contract, the TMSI would receive a rating from his or her supervisor.  See id. ¶ 8.  Diaz's received a rating of "3" at the end of 2010.  See id.  CL&P states that a rating of "3" means that the employee is "not recommended for an interview or re-hire for a meter service position," Def.'s Rule 56(a)1 Statement ¶ 8, but  Diaz disputes that, in practice, a rating of "3" had any such meaning.  Pl.'s Rule 56(a)2 Statement ¶ 8.

Despite this rating, CL&P again hired Diaz as a TMSI on May 16, 2011, this time to work in its Hartford work center.  See id. ¶ 1.  Diaz's position was to last six months, terminating in November 2011.  Id. ¶ 2.  Diaz's immediate supervisor in his 2011 position was Gregory Thibault.  Id. ¶ 9.  At the end of 2011, Thibault, as a supervisor,

---

[1] The court generally cites to Diaz's Rule 56(a)2 Statement (Doc. No. 38-2) to show CL&P's underlying Rule 56(a)1 Statement (Doc. No. 35) and Diaz's response to that statement.

[2] Diaz's Rule 56(a)2 Statement contains a number of responses indicating that Diaz has "no knowledge" of CL&P's corresponding Rule 56(a)1 assertion.  "[B]ecause [Diaz] has not denied these assertions of fact and has offered no evidence to dispute their accuracy," Knight v. Hartford Police Dep't, No. 3:04CV969 (PCD), 2006 WL 1438649, at *4 (D. Conn. May 22, 2006), the court deems these assertions admitted.  See Johnson v. Connecticut Dep't of Admin. Servs., 972 F. Supp. 2d 223, 229 (D. Conn. 2013) ("Where the Plaintiff has objected to Defendant's facts but has failed to support her objection with any admissible evidence in the record, where the record itself does not support Plaintiff's denials, or where the Plaintiff has neither admitted nor denied a fact and where the record supports such fact, those facts are deemed to be admitted.") aff'd, 588 Fed. App'x 71 (2d Cir. 2015).  To the extent Diaz claims "no knowledge" as to only a portion of an assertion, the court deems admitted only that portion of the assertion.

was asked to rank the employees that he supervised and to indicate whether any of them "made a disconnect for non-payment error."  See id. ¶ 33.  Thibault gave Diaz a rank of "3" and indicated that he had made two disconnection errors.  See id. ¶¶ 9, 33, 34.  Diaz was the only TMSI who "fell into both categories."  Id. ¶ 35.  Diaz does not dispute that Thibault gave him a rating of "3" or noted that Diaz made two disconnection errors, but he does assert that he was not, in fact, involved in two disconnection errors.  See id. ¶ 34.

On July 27, 2011, Diaz applied to an opening for a Meter Service Mechanic-Electric (the "July 2011 position"), a permanent position at CL&P.  Id. ¶ 10.  In September 2011, Thibault decided not to interview Diaz for this position.  See id. ¶¶ 15, 16.

In December 2011, Diaz applied for another eight positions at CL&P.  See id. ¶ 27.  Diaz was qualified for two of the eight positions.  See id. ¶ 28.  Of the two for which Diaz qualified, one was a position outside of the CL&P Meter Service Department.  Id. ¶ 30.[3]  The other was a Meter Service Mechanic-Electric (the "December 2011 position").  See id. ¶ 31.  CL&P interviewed the same pool of interviewees that it had interviewed for the July 2011 position.  See id. ¶ 31.  "Similar situations at CL&P have occurred wherein a job is posted and subsequently, the same job is posted within months, and as a result of the timing, [CL&P] relies on the interviews from the first posting."  Id. ¶ 32.

Diaz applied for more positions in 2012 (the "February 2012 positions").  See id. ¶¶ 37, 38.  Thibault had no role in deciding whether to select him to interview for any of

_____

[3] Diaz presents no evidence related to this position.

these positions, and he had no role in deciding whether to rehire Diaz in February 2012. Id. ¶ 37, 39.

Diaz never complained to Thibault or Marionne Eichler, who was a Human Resources Consultant involved with management of CL&P's Meter Service Department, about not being interviewed on the basis of race.  See id. ¶ 41; see also Eichler Aff. ¶ 4. However, Thibault testified that he recalled receiving an e-mail or a phone call from his manager informing him that a complaint had been filed against him.  See Pl.'s Rule 56(a)2 Statement ¶¶ 41–44 (citing Thibault Dep. 51:7–18).  Thibault stated that he received this information from his manager "after the temp program ended," although he could not remember the exact time.  Thibault Dep. 51:7–18.  The parties dispute when Thibault learned of Diaz's complaint.  See Pl.'s Rule 56(a)2 Statement ¶ 44.

## III.    STANDARD

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  Once the moving party has met its burden, in order to defeat the motion, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record to address questions of fact, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.  Summary

judgment "is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised, on the basis of the evidence presented, the question must be left to the finder of fact. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## IV.   DISCUSSION

CL&P seeks summary judgment on Diaz's Title VII claims of race and national origin discrimination and retaliation, contending that his claims are untimely, that he cannot make out a prima facie case, and that CL&P chose not to rehire him for legitimate, non-pretextual reasons.  CL&P also moves to strike one of Diaz's exhibits and certain statements in his Local Rule 56(a)2 Statement.

Because, based on the evidence submitted by the parties, no reasonable jury could find that CL&P's reasons for not rehiring Diaz were pretextual, CL&P is entitled to judgment as a matter of law.

### A.   Timeliness

At the threshold, CL&P argues that Diaz's Title VII claims relating to the July 2011 job posting are untimely because Diaz failed to file his Charge of Discrimination with the Commission on Human Rights and Opportunities (the "CHRO") in accordance with section 2000e-5(e)(1) of title 42 of the United States Code.  "Under Title VII, a plaintiff must file an employment discrimination charge with the EEOC either 180 or 300 days after an alleged employment practice occurred." Richardson v. Hartford Pub. Library, 404 F. App'x 516, 517 (2d Cir. 2010) (internal quotation marks omitted); see

<u>also</u> 42 U.S.C. § 2000e-5(e)(1).  "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days." <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 109 (2002).  "[T]he 300–day limitations period applies where a plaintiff initially files a Title VII or ADEA discrimination charge with a qualifying state agency, regardless of whether that charge was timely under state law." <u>Richardson</u>, 404 F. App'x 5 at 518 (citing <u>EEOC v. Commercial Office Products Co.</u>, 486 U.S. 107, 124 (1988); <u>Goodman v. Heublein, Inc.</u>, 645 F.2d 127, 132 (2d Cir.1981)).

Diaz filed his charge with the CHRO and the EEOC on March 30, 2012.  Pl.'s Ex. 7.  Diaz alleges illegal discrimination resulting from a July 27, 2011, job posting, among others.  Because 300 days prior to March 30, 2012, is June 4, 2011, Diaz's claims relating to the July 27, 2011, job posting are timely.

     B.     <u>Motion to Strike</u>

CL&P moved to strike one of Diaz's exhibits – a letter submitted by a former CL&P employee – and certain statements in his Local Rule 56(a)2 Statement.  As an initial matter, there is some uncertainty in this District regarding whether a motion to strike is an appropriate tool for a party to deal with an opponent's summary judgment evidence.  <u>See</u> <u>Martin v. Town of Westport</u>, 558 F. Supp. 2d 228, 230 (D. Conn. 2008) (discussing the issue).  To the extent that, as many courts have stated, "[a] motion to strike is the correct vehicle to challenge materials submitted in connection with a

summary judgment motion," <u>Keene v. Hartford Hosp.</u>, 208 F. Supp. 2d 238, 242 (D.

Conn. 2002), the court grants in part and denies in part CL&P's Motion to Strike.

First, CL&P argues that a letter from Nelson Cabo Rodriguez, Diaz's former co-

worker, should be striken because it is "unquestionably hearsay and has not even the

slightest indicia of reliability."  Def.'s Mem. Supp. Mot. Strike (Doc. No. 40-1) at 2–3.

While the exhibit to which CL&P objected was originally an unsworn letter, Diaz

submitted a sworn affidavit from Rodriguez in which Rodriquez make substantially the

same statements.  <u>See</u> Pl.'s Obj. Mot. Strike, Ex. 1 (Doc. No. 44-1).  Thus, to the extent

CL&P objected to the letter because it was unsworn, the court grants CL&P's Motion to

Stirke the letter as moot.  To the extent CL&P's Motion to Strike applies to the content of

the newly submitted sworn Affidavit, the court grants the Motion as to paragraphs eight

and 19, which both simply conclude that Thibault was biased and favored whites over

Hispanics.  <u>See</u> <u>id.</u>

Second, CL&P argues that certain assertions in Diaz's Local Rule 56(a)2

Statement should be stricken because they are "argument, generalizations, legal

conclusions and non-responsive statements."  Def.'s Mem. Supp. Mot. Strike 3.  The

court agrees that Diaz's Local Rule 56(a)2 Statement contains some conclusory

statements.  "In deciding a summary judgment motion, however, it is necessary to look

to the record evidence, and inappropriate to rely solely on the 56(a)(2) statement."

<u>Barlow v. Connecticut</u>, 319 F. Supp. 2d 250, 259 (D. Conn. 2004) (citing <u>Giannullo v.</u>

<u>City of New York</u>, 322 F.3d 139, 142 (2d Cir. 2003) <u>aff'd sub nom.</u> <u>Barlow v. Dep't of</u>

<u>Pub. Health, Connecticut</u>, 148 F. App'x 31 (2d Cir. 2005).  Because the court relies on

the underlying evidence, not simply Diaz's Local Rule 56(a)2 Statement, CL&P's Motion

to Strike is denied as moot.  See id.

    C.    <u>Race and National Origin Discrimination</u>

    Title VII discrimination claims must survive a three-part burden-shifting test

established in <u>McDonnel Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>Id.</u> at 802, 805;

<u>McPherson v. New York City Dep't of Educ.</u>, 457 F.3d 211, 215 (2d Cir. 2006).  Under

this test:

> [The] plaintiff first bears the minimal burden of setting out a *prima
> facie* discrimination case, and is then aided by a presumption of
> discrimination unless the defendant proffers a legitimate,
> nondiscriminatory reason for the adverse employment action, in which
> event, the presumption evaporates and the plaintiff must prove that the
> employer's proffered reason was a pretext for discrimination.

<u>Id.</u> (internal quotation marks omitted).

    1.    Diaz's <u>Prima Facie</u> Case

    To establish a <u>prima facie</u> case of unlawful discrimination under Title VII, Diaz

must show "1) that he belonged to a protected class; 2) that he was qualified for the

position he held; 3) that he suffered an adverse employment action; and 4) that the

adverse employment action occurred under circumstances giving rise to an inference of

discriminatory intent."  <u>Feingold v. New York</u>, 366 F.3d 138, 152 (2d Cir. 2004).  The

parties do not appear to dispute that Diaz satisfies the first three elements.  The fourth

element is the only one at issue.

    "A plaintiff's burden to establish a <u>prima facie</u> case of discrimination is not

onerous.  Direct evidence is not necessary."  <u>Quaratino v. Tiffany & Co.</u>, 71 F.3d 58, 64

(2d Cir. 1995) (internal citations and quotation marks omitted).  Because courts "have

characterized the evidence necessary to satisfy this initial burden as 'minimal' and '*de*

8

*minimis*,' . . . the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage of the Title VII analysis." Zimmermann v. Associates First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001).

The court assumes that Diaz has established a prima facie case with evidence that he applied for positions that were filled by members outside of his protected class, but concludes that CL&P is nonetheless entitled to summary judgment because, based on the evidence submitted by the parties, no reasonable jury could find that CL&P's reasons for not hiring Diaz were pretextual. See Section IV.C.3., infra.

2.      CL&P's Reasons for Not Hiring Diaz

"The defendant's burden of production also is not a demanding one; [it] need only offer such an explanation for the employment decision." Bickerstaff v. Vassar Coll., 196 F.3d 435, 446 (2d Cir. 1999), as amended on denial of reh'g (Dec. 22, 1999). CL&P offers several legitimate, nondiscriminatory reasons for not interviewing Diaz for permanent positions. First, CL&P asserts that Diaz exhibited improper workplace conduct, such as shouting at Thibault, making ageist comments about older employees, and making racially charged comments in Thibault's presence. See Def.'s Mem. Supp. Summ. J. 12. Second, CL&P states that Diaz made multiple disconnection errors. Third, Diaz repeatedly received a rating of "3" from his supervisors – a rating which, according to CL&P, indicates that "he was not recommended for an interview or re-hire." Def.'s Rule 56(a)1 Statement ¶ 33. Fourth, CL&P had a large applicant pool and chose those applicants best suited for the job. See Def.'s Mem. Supp. Summ. J. 12. These are legitimate, nondiscriminatory reasons for not interviewing Diaz.

3.      Pretext

Because CL&P has offered legitimate nondiscriminatory reasons for not hiring

Diaz, "the presumption of discrimination disappears, and the question in reviewing a

motion for summary judgment becomes whether the evidence, when viewed in the light

most favorable to the plaintiff, is sufficient to sustain a reasonable finding that" the

reason for the adverse employment action "was motivated, at least in part, by

discrimination."  Tori v. Marist Coll., 344 F. App'x 697, 699 (2d Cir. 2009) (citing

Tomassi v. Insignia Fin. Group, Inc., 478 F.3d 111, 114 (2d Cir. 2007)).  In some

instances, the factfinder may infer intentional discrimination from the falsity of the

employer's explanation.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S.

133, 147 (2000); see also Saulpaugh v. Monroe Community Hospital, 4 F.3d 134, 142

(2d Cir. 1993) ("[A] factfinder's disbelief of a defendant's proffered rationale may allow it

to infer the ultimate fact of intentional discrimination in some cases.").

Notably, however,

[t]he plaintiff must produce not simply some evidence, but sufficient
evidence to support a rational finding that the legitimate, non-
discriminatory reasons proffered by the defendant were false, and that
more likely than not discrimination was the real reason for the [adverse
employment action]. . . .  To get to the jury, it is not enough . . . to
disbelieve the employer; the factfinder must [also] believe the plaintiff's
explanation of intentional discrimination.

Weinstock v. Columbia University, 224 F.3d 33, 42 (2d Cir. 2000) (internal quotation

marks and citations omitted).  "[A]bsent direct evidence of bias, a plaintiff must offer

concrete evidence of disparate treatment. A plaintiff cannot rely upon 'purely conclusory

allegations of discrimination.'"  Turner v. NYU Hospitals Ctr., 784 F. Supp. 2d 266, 282

(S.D.N.Y. 2011) (quoting Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)), aff'd, 470 F. App'x 20 (2d Cir. 2012).

Moreover, "it is not the function of a fact-finder to second-guess business decisions." Dister v. Cont'l Grp., Inc., 859 F.2d 1108, 1116 (2d Cir. 1988). "Only where an employer's business decision is so implausible as to call into question its genuineness should this Court conclude that a reasonable trier of fact could find that it is pretextual." Fleming v. MaxMara USA, Inc., 371 Fed. App'x 115, 118 (2d Cir. 2010). The ultimate question is "what motivated the employer; the factual validity of the underlying imputation against the employee is not at issue." McPherson v. New York City Dep't of Educ., 457 F.3d 211, 216 (2d Cir. 2006) (internal citations and quotation marks omitted); see also Katica v. Webster Bank, N.A., No. 13-CV-30072-MAP, 2014 WL 3587383, at *7 (D. Mass. July 18, 2014) ("Defendant's good faith, but mistaken, belief would still constitute a legitimate reason for the termination.").

Diaz attempts to show that each of CL&P's reasons for not hiring him was pretextual. First, Diaz asserts that he was only involved with one disconnection error – an error that was, in fact, caused by a white employee who was later hired as a permanent employee. Pl.'s Mem. Obj. Summ. J. 17. However, Diaz does not dispute that Thibault believed that he (Diaz) had caused the error: in fact, Diaz admitted that, when Thibault had confronted him about turning off the wrong customer's power, he did not inform Thibault that someone else had made the mistake. See Thibault Dep. 54:10–15. Thus, while a reasonable juror could find that Diaz did not make the disconnection error, there is no evidence from which a reasonable juror could infer that Thibault did not believe in good faith that Diaz made the error. Further, aside from

11

Diaz's testimony that he was only involved in one disconnection error, there is no evidence that Thibault did not believe in good faith that Diaz had made the second disconnection error that was noted in his rating of Diaz.  See Pl.'s Rule 56(a)2 Statement ¶ 34; see also Thibault Dep. 92:22–93:7.

Next, Diaz contends that making a disconnection error was not a serious mistake.  Pl.'s Mem. Obj. Summ. J. 17.  Diaz testified that making a disconnection error "was not a big deal; everybody does it in the department," that "[i]t was an ongoing thing.  Everybody in the meter department was shutting people's power off by accident," and that "[i]t was just a normal thing that happened."  Diaz Dep. 54:17–58:7.  However, Diaz provides no basis that would make him competent to testify to these facts, and it would not be reasonable to infer that he has a non-hearsay basis.  Moreover, he acknowledged that, during 2011 – the "[s]ame time frame" – CL&P "started cracking down because somebody turned off the power for Hot 97.  Then they made a big issue." Id. 54:24–55:19.  Diaz points out that, although CL&P claims Diaz made two disconnection errors, Thibault only coached him once and never issued any verbal or written warnings to Diaz, suggesting that if disconnection errors were serious, he would have been coached both times and issued warnings.  Pl.'s Mem. Obj. Summ. J. 17. However, the issue before the court is not whether Diaz committed a serious error. Rather, it is simply whether there is "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false." Weinstock, 224 F.3d at 42.

Regarding CL&P's assertion that Thibault exhibited poor workplace conduct, Diaz testified that he never got into an argument with or raised his voice at Thibault on

his (Diaz's) first day.  Id.  Further, Diaz argues that Thibault's assertion that Diaz made inappropriate comments is "unworthy of credence" because "employees routinely made racially insensitive comments about minorities and that Thibault refused to step in and stop it." Id. (citing Diaz Dep. 70:7–72 18, 107:5–108:2, 107:5–108:2).[4]  However, even if such remarks were made, "remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark."  Johnson v. C. White & Son Inc., 772 F. Supp. 2d 408, 414 (D. Conn. 2011); see also Vogel v. CA, Inc., No. 3:12-CV-00990 VLB, 2014 WL 4414540, at *13 (D. Conn. Sept. 8, 2014) ("In the absence of a clearly demonstrated nexus to an adverse employment action, stray workplace remarks are insufficient to defeat a summary judgment motion.").  Diaz also does not deny that older employees – including the union chief – complained to Thibault about Diaz making ageist comments.  See Pl.'s Rule 56(a)2 Statement ¶ 20.

Diaz next argues that a "3" rating "was not actually used by [CL&P] to determine whether or not to rehire an applicant."  Pl.'s Obj. Summ. J. 19.  Diaz argues that his "3" rating, which CL&P contends is the worst rating an employee can receive, is suspect for two reasons.  First, CL&P rehired Diaz after he had received a "3" at the conclusion of his first temporary assignment.  Second, Diaz argues that "there is no objective criteria for the[ ] ratings, which makes it more likely that [his] poor rating is the product of the discriminatory attitude in [CL&P's] workplace."  Id. (internal citations omitted).  However,

---

[4] Diaz explained that these comments were jokes, and he stated that he had not been around anyone joking about Hispanics.  See Diaz Dep. 107:8–108:18.

regarding the first point, Diaz does not dispute that CL&P rehired him after he received his first "3" rating because "the pool of candidates for 2011 was limited, and [CL&P] decided to re-hire the meter service installers from the prior years."  Def.'s Rule 56(a)1 Statement ¶ 8; Pl.'s Rule 56(a)2 Statement ¶ 8.  Regarding the second point, Diaz offers no evidence that CL&P's workplace itself contained a "discriminatory attitude," and he admits that the only person to discriminate against him at CL&P was Thibault. Diaz Dep. 103:22–104:15.  However, Thibault did not give Diaz his first "3" rating: Thibault did not supervise Diaz during Diaz's first temporary position at CL&P.  See Pl.'s Rule 56(a)2 Statement ¶¶ 6–9.  Thus, Diaz offers no evidence from which a reasonable juror could conclude that Diaz's low rating was pretext for discrimination.

Finally, Diaz contends that Thibault would "only send white Caucasians to far-distance places where they can get extra money on hours," Diaz Dep. 65:3–5, and he argues that this practice supports an inference of Thibault's discriminatory motivation. Pl.'s Mem. Obj. Summ. J. 19–20.  However, Diaz admits that, on occasion, he was sent farther to locations like Cheshire or Bristol, see Diaz Dep. 66:1–3, and he offers no evidence to rebut Thibault's testimony that "two admin vendors" analyzed and scheduled "the work randomly to whatever [temporary] employees were there" on a given day.  See Thibault Dep. 60:25–61:7.

Because Diaz does not offer "sufficient evidence" for a reasonable jury to find that CL&P's asserted reasons for not hiring him were pretextual, Weinstock, 224 F.3d at 42, CL&P is entitled to judgment as a matter of law on Diaz's race and national origin discrimination claims.

D.    Retaliation

Diaz claims that he was not interviewed and rehired in retaliation for complaints he had made about unlawful discrimination.  See Compl. ¶ 51.  CL&P moves for summary judgment on this claim, arguing that Diaz has (1) failed to establish a prima facie case of retaliation regarding the July 2011 and February 2012 positions and (2) failed to offer evidence that CL&P's reasons for not hiring him for the December 2011 position were pretextual.

Retaliation claims must survive the McDonnell-Douglas burden-shifting framework.  Raniola v. Bratton, 243 F.3d 610, 624 (2d Cir. 2001).  A plaintiff claiming retaliation must also "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."  Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013).

1.    Prima Facie Case of Retaliation

To establish a prima facie case of retaliation, a plaintiff must show that (1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer.

Raniola v. Bratton, 243 F.3d 610, 624 (2d Cir. 2001) (internal quotation marks omitted).

There is no serious dispute as to the first three elements.  Regarding the fourth element, Diaz offers evidence showing that, after discovering whom Thibault had chosen to interview for the July 2011 position, he filed internal and union complaints against CL&P and Thibault for choosing to interview such applicants in a racially biased way.  See Diaz Dep. 78:19–23, 84:14–84:6, 98:20–99:14; see also Pl.'s Ex. 3, Def.'s Resp. Interrog. No. 6.  There is no dispute that Diaz made his complaint after Thibault

decided not to interview him for the July 2011 position.  Thus, as an initial matter, Diaz

has no retaliation claim as to the July 2011 position, because he filed his complaint after

that position was filled.  See Davis v. Town of Bloomfield, No. 3:12-CV-01271 JCH,

2014 WL 4364907, at *9 (D. Conn. Sept. 2, 2014) (holding that the plaintiff failed to

make out a prima facie case of retaliation where the adverse employment action

occurred before the plaintiff engaged in the protected activity).

Diaz argues that he can establish the fourth element for the December 2011 and

February 2012 positions because proof of a retaliation claim "can be established

indirectly by showing that the protected activity was closely followed in time by the

adverse action." Cifra v. G.E. Co., 252 F.3d 205, 217 (2d Cir. 2001) (internal quotation

marks omitted).  Even assuming that Diaz establishes a prima facie case based on this

temporal proximity, his retaliation claims fail because he offers no evidence that CL&P's

reasons for not hiring him were pretextual.

> 2.      Legitimate, Nondiscriminatory Reasons and Pretext

In addition to the legitimate, nondiscriminatory, and nonpretextual reasons the

court has already discussed, see Section IV.C.3. supra, CL&P asserts that the "same

pool of interviewees from the July, 2011 posting were interviewed for the [December

2011] position."  Def.'s Rule 56(a)1 Statement ¶ 31.  CL&P states that "[s]imilar

situations at CL&P have occurred wherein a job is posted and subsequently, the same

job is posted within months, and as a result of the timing, [it] relies on the interviews

from the first posting."  Id. ¶ 32.  Diaz does not dispute these facts, see Pl.'s Rule 56(a)2

Statement ¶¶ 31, 32, and he offers no evidence that this policy was a pretext.  He

simply disputes Thibault's claim that he was unaware of the complaint.  See Pl.'s Mem.

Obj. Summ. J. 20.  Even if Thibault became aware of Diaz's complaint before filling the December 2011 position, there is no evidence that Thibault's reliance on the earlier pool of interviewees was a pretext not to hire Diaz because of his complaint.  While "the temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, . . . without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext."  El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010).

Regarding the February 2012 positions, CL&P asserts that it relied on the reasons already discussed in Section IV.C.3., supra.  Diaz offers no evidence that these reasons are pretext in the context of the February 2012 positions because he admits that Thibault had no involvement in deciding whether or not to interview or hire Diaz for the February 2012 position.  See Pl.'s Rule 56(a)2 Statement ¶ 37.

## V.    CONCLUSION

For the foregoing reasons, the court **GRANTS** CL&P's Motion for Summary Judgment (Doc. No. 33).  The court **GRANTS** in part and **DENIES** in part CL&P's Motion to Strike (Doc. No. 40).


**SO ORDERED**.

Dated at New Haven, Connecticut, this 9th day of February, 2015.


/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge